STATE OF LOUISIANA

VERSUS

OSBORNE FIELD KELSON

NO. 23-KA-274

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-4976, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING


December 27, 2023


**JUDE G. GRAVOIS**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
John J. Molaison, Jr., and Scott U. Schlegel


**<u>AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM
COMMITMENT ORDER AND SENTENCING MINUTE ENTRY</u>**
   **JGG**
   **JJM**
   **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
      Honorable Paul D. Connick, Jr.
      Monique D. Nolan
      Thomas J. Butler
      Blaine B. Moncrief
      Matthew Whitworth

COUNSEL FOR DEFENDANT/APPELLANT,
OSBORNE FIELD KELSON
      Bertha M. Hillman

**GRAVOIS, J.**

Defendant, Osborne Field Kelson, appeals his conviction and sentence for sexual battery of a juvenile in violation of La. R.S. 14:43.1. Defendant was sentenced to eight years imprisonment in the Department of Corrections. On appeal, he argues that his sentence is unconstitutionally excessive. For the reasons that follow, we affirm defendant's conviction and sentence. We further remand the matter for correction of the Uniform Commitment Order and the sentencing minute entry, as noted below in our Errors Patent Review.

## PROCEDURAL HISTORY

On August 25, 2021, the Jefferson Parish District Attorney filed a bill of information charging defendant, Osborne Field Kelson, with one count of sexual battery of a juvenile, in violation of La. R.S. 14:43.1, on or between June 1, 2019 and October 31, 2019 (count one), and one count of indecent behavior with a juvenile, in violation of La. R.S. 14:81, on or between June 1, 2019 and October 31, 2019 (count two). Defendant pled not guilty at his arraignment on October 20, 2021.

On March 6, 2023, the State *nolle prossed* count two of the bill of information. The case proceeded to trial on March 6, 2023, and on March 7, 2023, the six-person jury returned a unanimous verdict of guilty as charged on the remaining count. On March 22, 2023, defendant filed a motion for a new trial, which was denied on March 27, 2023. On that same day, the trial court sentenced defendant to eight years imprisonment in the Department of Corrections. Defendant filed a motion to reconsider sentence, and on April 5, 2023, following a hearing, the trial court denied the motion to reconsider sentence.[1]

_____

[1] The State also filed a habitual offender bill of information against defendant, but withdrew the habitual offender bill on May 3, 2023.

# FACTS

In January 2020, Detective Kristen Hollis responded to a delayed reporting of sexual battery. The victim, J.K.,[2] was thirteen years old at the time of the incident. She was sixteen years old at the time of trial. The incident occurred in October 2019 at 6301 Riverside Drive in Metairie.

At trial, J.K. testified that she and her siblings were at defendant's apartment for a movie night and sleepover. Defendant is her uncle by marriage. J.K.'s aunt, Kellie Kelson, had picked up J.K. and her siblings and dropped them off at defendant's apartment, but did not stay there. J.K., her younger sister, defendant's two daughters, her cousin, and her "baby cousin" were all in defendant's bedroom watching a movie. Defendant and the baby cousin were in the bed, and everyone else was on the floor. Defendant told everyone that the only people that could be in the bed were J.K. and her baby cousin. Because her back was hurting, J.K. got into the bed; she was lying with her head towards the "bottom" of the bed, and defendant's head was towards the "top" of the bed. Her baby cousin was on the other side of the bed. J.K. felt defendant touch her leg, stop, and then touch her leg again. Defendant then went under the covers. J.K. felt defendant's fingers in her "private part," and he started licking in her "private part."[3] She recalled that defendant then gave her money via the Cash App and asked her if she "knew how to beat meat." While this was happening, the other girls were on the floor sleeping and her baby cousin was not in the bed anymore. She testified that the incident made her feel scared and nervous. J.K. explained that in the summer of 2018, she had the "same situation" with her father.

---

[2] In accordance with La. R.S. 46:1844(W)(3), the victim, who is a minor, and the victim's mother and sister will be referred to by their initials in order to protect the victim's identity.

[3] J.K. testified that he was touching her where her "hole's at" in the front.

J.K. testified that she first told her younger sister about the incident. She did not tell her mom right away because she was scared. When her mother learned about what had happened, she notified the police. J.K. testified that defendant gave her a "a lot" of money and gave her many gifts for Christmas, one of which was a promise ring.[4]

J.T., J.K.'s younger sister, testified that J.K. told her that defendant had touched her while they were having a movie night at defendant's apartment. She explained that J.K. told her "he had licked her down below and he kept asking her to beat his meat." J.T. explained that defendant was married to and lived with her Aunt Kellie, her mother's sister. On the night of the incident, her Aunt Kellie was at the apartment earlier, but then left and did not return. J.T. testified that at first, everyone was on the floor in defendant's bedroom. J.T. asked defendant if she could get in the bed, and he said no. Defendant then called for the "baby cousin" and J.K. to get in the bed with him. J.T. testified that in 2018, J.K. was "touched" by her father.

J., J.K.'s mother, testified that she had four children—an eighteen-year-old, twin sixteen-year-olds (one of which is J.K.), and a fifteen-year-old. She testified that two traumatic events had recently happened to J.K: J.K. was touched by her father and touched by defendant. J.K.'s father was arrested and was in jail. After that incident with her father, J.K. was homeschooled until she returned to school in person for basketball season. J.K. did not want to be around people and became withdrawn. J.K. would spend time with J.'s sister Kellie, defendant, and their children who were around J.K.'s age. J. allowed her daughters to spend the night at their Aunt Kellie and defendant's home in Metairie.

---

[4] J.K. testified that her Aunt Kellie gave the ring to her at a Christmas party, but it was from both defendant and her Aunt Kellie.

On the night of the incident, Kellie picked up the girls from their home in LaPlace. J. did not find out that anything had happened to J.K. that night until around Christmas. J. then alerted the authorities and participated in a recorded statement with Detective Hollis. J. told Detective Hollis that she made a surprise visit to defendant's apartment the evening defendant touched J.K. When she arrived, the boys were downstairs, and the girls were in the bedroom with defendant on a pallet on the floor. J. did not like that Kellie was not present with the girls, and she took them home. J. testified that she told Detective Hollis that as far as she knew, "no one else saw anything that night."

J. also told Detective Hollis that for Christmas, defendant bought J.K. a promise ring, a laptop, and toys, and bought J.T. a hoverboard. J. explained that defendant used his money for the gifts because he was the one working, and Kellie bought the gifts and gave them to J.K. J. informed Detective Hollis that Kellie and defendant told J. that J.K. could live with them and go to school with their children. They offered to buy her clothes for school.

Detective Hollis testified that because of the victim's age, an interview was scheduled with the Children's Advocacy Center. Captain Renee Kinler, a certified forensic interviewer with the St. Charles Parish Sheriff's Office, conducted the forensic interview of J.K. J.K.'s account of the incident during the forensic interview was consistent with her trial testimony.

Detective Hollis explained that they were unable to interview the others present when the incident occurred and J.K.'s Aunt Kellie. Detective Hollis confirmed that in her police report and affidavit, it did not state that defendant asked J.K. to get into the bed. Detective Hollis learned through the course of her

investigation that defendant gave J.K. gifts like a laptop and a promise ring and sent money to J.K. via Cash App.[5]

Kellie Kelson testified at trial that although she was still married to defendant, she was currently separated from him. She testified that she received a new set of wedding rings for Christmas, and she put one of her old rings in a stocking for one of the games for the kids on Christmas. J.K., her niece, ultimately got the ring, and it was a gift from her to J.K. J.K. received a laptop that she purchased and other gifts, but J.K. was not the only child to receive a laptop and other gifts.

On cross-examination, Kellie testified that her nieces slept at her house often. She was not aware of the occasion when "the girls" had a movie night with a pallet on the floor. When defendant was arrested for the instant charge, she did not speak to any detectives about the incident, was not aware that the incident had occurred, and was already separated from defendant. She explained that after they separated, she continued to pick up and drop off her nieces for sleepovers at defendant's apartment. Defendant's daughters were present for the sleepovers as well. She confirmed that she would have not been present "at the sleepover" because it was after the separation.

## LAW AND ANALYSIS

In his only assignment of error, defendant argues that although his eight-year sentence was within statutory limits, it is nevertheless unconstitutionally excessive. Defendant avers that seventeen aggravating circumstances of La. C.Cr.P. art. 894.1(B) do not apply to him. Defendant argues that he was gainfully employed and married to the mother of his children at the time of his arrest. Defendant contends that the trial court failed to note these mitigating factors.

---

[5] Detective Hollis explained that she was unable to receive documentation of the Cash App. transaction because J.K. did not know the username and did not have her phone.

At the sentencing hearing on March 27, 2023, victim advocate Melanie Villemarette read a victim impact statement submitted by J.K. In the statement, J.K. thanked God for getting her through the depression and pain she went through due to these events. She thanked her parents for making her strong. She expressed that she was very proud of herself for how far she had come since she thought that she would never get over the trauma and be happy. She realized that this is something that will be with her forever. Experiencing this incident made her lose trust in people, and it is hard for her to trust again. She expressed that her brother was always there for her, and she would always go to him for anything. She stated that she did not go around defendant much at first because she was shy. Defendant knew what had happened to her in the past and still took advantage of her trust. She explained that she realized everything happened for a reason, and she has to be strong and keep pushing. She concluded by thanking the court.

After hearing the victim impact statement, the trial court sentenced defendant to eight years imprisonment in the Department of Corrections. The trial court did not provide reasons for imposing the sentence. The defense noted its objection to the sentence and notified the trial court that it would be filing a motion to reconsider.

Defendant filed a motion to reconsider sentence on March 27, 2023. In the motion, defendant stated that pursuant to La. C.Cr.P. art. 881.1, the sentence imposed was excessive and should be reconsidered, and a lower sentence "more in keeping with fairness and state and federal constitutional standards" should be imposed. At the motion hearing on April 5, 2023, the defense submitted the matter on the written motion. The State objected to the motion to reconsider, and the trial court denied the motion to reconsider without reasons, noting the defense's objection to its ruling. This appeal followed.

As an initial matter, on appeal, defendant argues that the trial court failed to take into consideration the mitigating factors of La. C.Cr.P. art. 894.1(B). The record does not reflect, however, that defendant raised this issue in either his written motion to reconsider sentence or at the hearing on the motion. The law is clear that the failure to make or file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for unconstitutional excessiveness only. *State v. Smith*, 16-406 (La. App. 5 Cir. 8/30/17), 227 So.3d 337, 363, *writs denied*, 17-1643 (La. 9/14/18), 252 So.3d 481, and 17-1660 (La. 9/14/18), 252 So.3d 482. Indeed, this Court has held that when the specific grounds for objection to the sentences, including alleged non-compliance with La. C.Cr.P. art. 894.1, are not specifically raised in the trial court, then these issues are not included in the bare review for unconstitutional excessiveness, and the defendant is precluded from raising these issues on appeal. *State v. Clark*, 19-518 (La. App. 5 Cir. 6/24/20), 296 So.3d 1281, 1291, *writ denied*, 21-62 (La. 3/9/21), 312 So.3d 585. Accordingly, we find that defendant is not entitled to a review of whether the trial court complied with La. C.Cr.P. art. 894.1 in this appeal and is limited to a review of his sentence for unconstitutional excessiveness.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v. Calloway*, 19-335 (La. App. 5 Cir. 12/30/19), 286 So.3d 1275, 1279, *writ denied*, 20-266 (La. 7/24/20), 299 So.3d 69. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. *State v. Woods*, 18-413 (La. App. 5 Cir. 12/19/18), 262 So.3d 455, 460. According to La. C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In reviewing a sentence for

excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. *Calloway*, *supra*. The relevant question on appeal is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *See State v. Dixon*, 19-7 (La. App. 5 Cir. 12/30/19), 289 So.3d 170, 174, *writ denied*, 20-143 (La. 7/17/20), 298 So.3d 176. The sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Hankton*, 20-388 (La. App. 5 Cir. 7/3/21), 325 So.3d 616, 623, *writ denied*, 21-1128 (La. 12/7/21), 328 So.3d 425.

In reviewing a trial court's sentencing discretion, three factors are considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. *Woods*, 262 So.3d at 460; *State v. Allen*, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880. However, there is no requirement that specific matters be given any particular weight at sentencing. *Woods*, 262 So.3d at 460-61.

Defendant was convicted of one count of sexual battery in violation of La. R.S. 14:43.1. The sentencing provision of the statute applicable in the instant appeal, La. R.S. 14:43.1(C)(1), provides, "Whoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years." The trial court sentenced defendant to eight years imprisonment in the Department of Corrections.

In *State v. Badeaux*, 01-406 (La. App. 5 Cir. 9/25/01), 798 So.2d 234, 236, *writ denied*, 01-2956 (La. 10/14/02) 827 So.2d 414, cited by the State, the trial court sentenced defendant to ten years at hard labor for his conviction of sexual battery and seven years at hard labor for his conviction of indecent behavior with a

juvenile, with the sentences to run consecutively. This Court found that the sentences were not excessive, noting that defendant established a relationship of trust with the victim by giving her candy and abused the relationship by molesting the vulnerable victim. *Id*. at 240. This Court stated that while generally, maximum sentences were reserved for cases involving the most serious violations of the charged offense, the jurisprudence indicated that maximum or near maximum terms of imprisonment may not be excessive when the defendant has exploited a position of trust to commit sexual battery or indecent behavior with a juvenile. *Id.* at 239.

In *State v. Rubio*, 22-205 (La. App. 5 Cir. 12/28/22), 357 So.3d 413, *writ denied sub nom. Southland Engine Co, Inc. v. State through Dep't Transportation & Dev.*, 23-67 (La. 3/28/23), 358 So.3d 518, also cited by the State, this Court found that an eight-year sentence for sexual battery was not excessive. The defendant in *Rubio* was the live-in boyfriend of the victim's mother and like a stepfather to the fifteen-year-old victim. The defendant touched the victim's vagina on multiple occasions and took inappropriate photographs and videos of the victim without her knowledge. The victim suffered emotional harm as a result of the incidents. This Court noted despite the defendant being a first-time offender, he exploited his position of trust. *Id.* at 423-24.

In *State v. Toups*, 546 So.2d 549 (La. App. 1 Cir. 1989), the defendant was sentenced to eight years for the sexual battery of a five-year old child who was the daughter of his girlfriend. The child testified that the defendant had touched her private place and forced her to rub his. Although the defendant had no prior felony convictions, the appellate court found that the sentence close to the maximum was not excessive.

In *State v. Hubb*, 97-304 (La. App. 5 Cir. 9/30/97), 700 So.2d 1103, 1106, this Court found that sentences of six and one-half years and seven years were not

unconstitutionally excessive for two defendants who pled guilty to sexual battery. The defendants "French kissed" both juvenile victims on multiple occasions, and showed one victim photographs of nude women. One defendant exposed his genitals to both children and forced one of the children to fondle him. One of the defendants had no criminal history, and the other defendant had only misdemeanor offenses.

In the instant case, we find that the trial court did not abuse its discretion by imposing an eight-year sentence. Considering the nature of the crime and the nature and background of the offender, the record indicates that defendant was J.K.'s uncle. J.K. was thirteen years old at the time of the incident. J.K., J., and J.T. all testified that J.K. had previously been touched by her father who was facing criminal charges for the offense. J. testified that after the incident with her father, J.K. became withdrawn and did not attend school for some time. After the sexual abuse by her father, defendant held the sleepover in his room and sexually abused his niece, again victimizing her. J.K.'s testimony provided that defendant put his finger and tongue in J.K.'s "private part." J.K. also testified that defendant asked her if she knew how to "beat meat." According to J.K. and her sister's testimony, other children were present in the bedroom. J.K.'s forensic interview was consistent with her testimony in court. J.K. expressed in her victim impact statement that defendant took advantage of her trust in him. She also expressed the trauma she faced because of the incident. This Court takes into consideration J.K.'s young age and vulnerable state, having been a recent victim of sexual abuse by her own father.

While the record provides that defendant was married to J.K.'s aunt and had children of his own, the record also provides that defendant gave money to J.K. after the incident. J. testified that defendant and J.K.'s Aunt Kellie gave J.K. more gifts than the other children for Christmas.

Regarding sentences imposed for similar crimes by this Court and other courts, the above jurisprudence reflects that courts have imposed similar sentences for similar crimes. Further, like the cases previously discussed, defendant in the instant matter exploited his position of trust when he sexually abused his thirteen-year-old niece. In addition to the victim's young age, we find that she was even more vulnerable because of the recent alleged sexual abuse she had been subjected to by her own father.

Furthermore, defendant faced a maximum sentence of ten years and was sentenced to eight. As such, we find that the record adequately supports the sentence and clearly indicates that the sentence is not unconstitutionally excessive. This assignment of error is without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

### Sentencing Delays

Louisiana Code of Criminal Procedure art. 873 requires a twenty-four-hour delay in sentencing after the denial of a motion for a new trial unless the defendant waives the delay. When a defendant challenges the penalty imposed and the imposed sentence is not mandatory, the failure to observe the twenty-four-hour delay mandated in La. C.Cr.P. art. 873 cannot be considered harmless error. *State v. Nicholas*, 10-866 (La. App. 5 Cir. 5/24/11), 67 So.3d 610, 617. Generally, when a defendant challenges a non-mandatory sentence and the delay is not waived, the defendant's sentence must be vacated and the matter remanded for resentencing. *State v. Cummings*, 10-891 (La. App. 5 Cir. 10/25/11), 79 So.3d 386, 404, *writ denied*, 11-2607 (La. 4/9/12), 85 So.3d 693.

Nevertheless, the Louisiana Supreme Court in *State v. Kisack*, 16-797 (La. 10/18/17), 236 So.3d 1201, 1205-06, *cert. denied*, -- U.S. --, 1385 S.Ct. 1175, 200 L.Ed.2d 322 (2018), stated that a defendant's pronouncement of his readiness for sentencing may operate as an express waiver of the twenty-four-hour sentencing delay, but a defendant's mere participation in the sentencing hearing is insufficient to constitute an express waiver as required by La. C.Cr.P. art. 873.

In the present case, defendant filed a motion for a new trial on March 22, 2023. The trial court denied the motion for a new trial on March 27, 2023, and imposed defendant's sentence thereafter on the same day after a victim impact statement was heard. At the hearing, after the trial court denied the motion for a new trial, the trial court asked the defense if they were ready to go forward with sentencing, and the defense answered, "Uh, yes." Accordingly, we find that defendant expressly waived the requisite sentencing delay.

### *Advisal of Post-Conviction Relief*

The record reflects that the trial court failed to advise defendant of the two-year prescriptive period for filing an application for post-conviction relief. Accordingly, by way of this opinion, defendant is advised that no application for post-conviction relief, including an application which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. *See State v. Barnett,* 18-254 (La. App. 5 Cir, 4/3/19), 267 So.3d 209, 235.

### *Imposition of Sentence without Benefits*

The sentencing hearing transcript and the sentencing minute entry reflect that defendant's sentence was imposed without a restriction of benefits as required by La. R.S. 14:43.1(C)(1). The Uniform Commitment Order ("UCO") is also void

under the column labeled, "Amount of time to be served without benefit, if applicable (8)."

Under La. R.S. 15:301.1 and *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790, a statute's requirement that a defendant be sentenced without the benefit of parole, probation, or suspension of sentence is self-activating. Therefore, the trial court's failure to impose defendant's sentence without the benefit of parole, probation, or suspension of sentence requires no corrective action. However, to ensure accuracy of the record, we remand this matter for correction of the sentencing minute entry and UCO to show that defendant's sentence is to be served without the benefit of parole, probation, or suspension of sentence.

### Sex Offender Registration Designation

The UCO also fails to include as a "Sentence Condition" pre-printed on the form that defendant shall comply with the Sex Offender Registration statute under the provisions of La. C.Cr.P. art. 895 and La. R.S. 15:541, *et seq.*  The UCO specifically contains an unchecked box next to a statement that defendant shall comply with these requirements.

To ensure accuracy in the record, on remand, the trial court shall also correct the UCO to reflect that defendant shall comply with the sex offender registration statute.

We further direct the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department.  *See State v. Carriere*, 19-366 (La. App. 5 Cir. 12/26/19), 289 So.3d 149, 153.

## DECREE

For the foregoing reasons, defendant's conviction and sentence are affirmed. The matter is remanded for correction of the Uniform Commitment Order and sentencing minute entry, as noted above.

**AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER AND SENTENCING MINUTE ENTRY**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 27, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-274

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          BERTHA M. HILLMAN (APPELLANT)

**MAILED**
BLAINE B. MONCRIEF (APPELLEE)          HONORABLE PAUL D. CONNICK, JR.
ASSISTANT DISTRICT ATTORNEY            (APPELLEE)
JUVENILE COURT                         DISTRICT ATTORNEY
1546 GRETNA BOULEVARD                  MATTHEW WHITWORTH (APPELLEE)
HARVEY, LA 70058                       ASSISTANT DISTRICT ATTORNEY
                                       TWENTY-FOURTH JUDICIAL DISTRICT
                                       200 DERBIGNY STREET
                                       GRETNA, LA 70053